Zehner v. Jordan-Elbridge Board of Education. Let the folks clear out and then we'll go ahead. Good morning, your honors, and may it please the court. My name is Steven Ciotoli, I'm a lawyer with O'Hara O'Connell and Ciotoli in Syracuse, New York. And I represent the appellate in this case, Dave Zehner. Dave Zehner is the high school principal for the Jordan-Elbridge Central School District, also near Syracuse. Has been so for about eight year, eight year veteran. Also had a long career prior to going to Jordan-Elbridge as an administrator and teacher, and a good and clean record. This dispute arises because the school district became very dysfunctional starting around 2010. The hearing officer, we had the 3020A hearing on this matter, and in his decision, he refers to the zeitgeist of the atmosphere at the district, a great word. Mr. Zehner, as the high school principal, found himself on the wrong side of some personality conflicts which developed. Where the board targeted certain administrators, including the elementary school principal. Mr. Zehner is the high school principal, the assistant superintendent for business. I think we're well familiar with the facts and I understand there's a lot of- And that the hearing officer's decisions or findings somehow should bind the district court. Are you making that argument, just so I understand, as to the individuals here as opposed to the board? Well, as to the board, most certainly. And as to the individuals, which is Mr. Zehner- I understand you're making it as to the board, which participated in that hearing. And we argue that regarding Mr. Mevick, the board counsel, and Mr. Zachary, the superintendent for a critical period of time here, they were in privity with the board. And that they would also be bound by the decision of the hearing officer. They were in privity with the board such that all of their rights and interests were protected in the course of the hearing officer proceedings? To the same extent they would be if they were actually sitting there under the gun? I think the law, obviously they're not sitting there under the gun, they're not sitting there with their own counsel. But the Board of Education was certainly represented by very able counsel. This was an extensive hearing in which almost every aspect of what took place between Mr. Zehner and the district was reviewed. Mr. Zehner had no burden, right, in those proceedings? I would disagree, Your Honor. First of all- Ultimately, whose burden is it? Isn't it the board's burden to establish the disciplinary basis for disciplinary? The board brings the charges, yes. But Mr. Zehner obviously is defending the charges, but also there was a hearing within a hearing under education law section 3020A. You, as the charge party, can claim that the charges are frivolous. And Mr. Zehner claimed that several, a major part of the charges were frivolous, brought against him with no basis of fact. That means that the board hasn't proved their charges. Well, I think it shows two things, Your Honor. Number one, it shows that the board did not prove their charges, so Mr. Zehner effectively defended. He won, but also he won on his burden of proof. He was the prevailing party. He was the moving party to say to the hearing officer, these charges are frivolous. There was no basis in them. This hearing took about 42 days. It went over about a year, 8,000 pages and transcripts, about 41 witnesses, about 400 exhibits. The irony is that these were not fictitious charges, that he has agreed that some of these events happened. There are several minor incidences that did occur, but altogether there are about 222 specifications. The hearing officer found in Mr. Zehner's favor in 221 of them. That's a pretty good winning record. I think any baseball team or any lawyer would love that winning record, Your Honor. So he prevailed on those. He prevailed on frivolous charges. The frivolous charges represented about a third of the hearing. Under New York State education law, you get your attorney's fees. Mr. Zehner's attorney's fees for about a third of the hearing were paid to him by this school district. We believe that makes him the prevailing party. And if it doesn't go all the way to issue preclusion, all the way to collateral estoppel, and I understand what the issue is. At least doesn't it establish a disputed issue of fact? I mean, their whole case, Your Honors, was the counseling memos. The hearing officer, in a very reasoned, judicious, thorough decision, 220 pages, went through each counseling memo and found in Mr. Zehner's favor on all of them, all of them. They didn't prevail on one of them. Can it be said that a jury could not find the same thing? Can it be said that a jury would be compelled? What are the issues of fact with respect to the First Amendment claim? I think the only real issue is causation, Your Honor. Okay, we have a First Amendment retaliation claim. Okay, was he engaging in protected activity? Was he speaking out on matters of public concern? That wasn't even- This is in the fall, in the fall and the early spring, right? Yeah, more through 2010 into 2011. When you look at the lower court's decision in the briefing, there seems to be no dispute that he's speaking out on matters of public concern at these board meetings. Budgetary, fiscal, financial matters. So is he expressing his First Amendment rights? Yes. Is there- Does he have a duty to speak out on those in his capacity as principal? No, I mean, he is the principal. He's the suspended principal. Well, he can't screw up on the budget, right? I mean, he's responsible for fiscal matters, at least insofar as they pertain to his operation. I would disagree with that, Your Honor. I think- You would? I would say- Principals in New York State can, you know, we don't care about, I don't care about the budget. I mean, the budget is passed by the Board of Education. They're the main executive, lead executive body of the Board of Education. So they're the ones who pass the budget. Obviously, as the high school principal, he's overseeing the staff, the high school, and that involves expenditure of funds. Why isn't that part of his job obligation to do? Well, I think it is a part of his job obligations. Only insofar as he's the high school principal. But he has a separate duty to actually speak out on those. I mean, it sounds like, you know, Your Honor's kind of talking about Garcetti, or a Connick versus Myers type situation. He's not speaking out on his job duties, or his responsibilities. He's talking about the way the school district is functioning, and the way certain administrators are being targeted, the way personnel decisions are being made. So, and he's doing this, you're saying, after he was suspended, correct? Correct. There is some associational obvious activity before he suspended. The first one suspended in this was the elementary school principal, Janice Hsu. So that was, and he was seen as a supporter, an ally of hers. That's really when he got targeted. That's really when the counseling memo started. That's really when the Board of Education went after him, because of his associational activities. He started to speak out on this at board meetings in support of the elementary school principal and other administrators who were being targeted. And what did they do? They suspended him. They brought three sets of charges against him. They banned him from the board meeting. He's a parent in this school district. His daughter goes to the high school. They even denied him his parental rights to engage with his daughter in her education at the high school. He brought two Article 78 petitions for violation of the open meetings law. He brought the Article 78 petition saying that the district violated the open meetings law when they appointed an interim superintendent. The court found in his favor on that open meetings law violation. They suspended him like a week later. Then they brought these charges against him. He brought a second Article 78 petition. He won an appeal on the first, and then they banned him from the board meetings under some trumped up charges. They banned him. For an entire year, he couldn't go to board meetings. For an entire year, he couldn't engage with his daughter who was a high school student. Because of the fact that they weren't able to effectively conduct the board meetings because of his speeches. Yeah. And he went over and he wouldn't abide by the rules that they set up for speakers and the police had to intervene and so forth. Well, I mean, and your honor, disputed issues of fact, the video I think is part of the record. The hearing officer did not find that. The hearing officer viewed the video, heard all the evidence, and said that it wasn't disruptive. We even had a New York State Supreme Court Justice Greenwood who heard the Article 78 petition on the ban. Who said, you know, other members of the public went over their time limit. They weren't ushered out. They weren't banned. Even the deputy sheriff you referred to, Officer Quigley, we took his deposition. He just said Mr. Zana was frustrated. He wasn't threatening. He wasn't disruptive. That's a lot of evidence that a jury can hear that these are disputed issues of fact and it shouldn't have been decided on a summary judgment. Thank you, your honors. You've reserved time. And I reserve your honor. Thank you. Thank you. May it please the court. My name is Charles Spagnoli with the law firm of Frank Miller. I represent the appellees in this action other than Danny Mevick and Dr. Lawrence Zacker. And they've ceded their time to you. They have. What was originally assigned as their time to you. Yes, your honor. What we have here is Mr. Zaner trying to present a wrongful discharge claim under the guise of a First Amendment retaliation claim. He doesn't have evidence of retaliation, which is why he goes to such extensive lengths to avoid being called upon to present any evidence of retaliatory. Isn't under our jurisprudence in a variety of cases, proximity of a protected action. And let's say, hypothetically that's, or as one example, the article 78 proceeding. Proximity to that and then an adverse employment action taken after that. Sufficient at least to get over, to get to the jury. Under some circumstances, it is, your honor. But in this case, I'm sorry? Under quite a few circumstances, we've held that. In this case, the circumstances establish that temporal proximity cannot raise an inference of causation. There seem to be seven, eight, nine, ten instances where he exercises his right to speak. And then there's disciplinary action taken within a matter of a few weeks. In each case, your honor, there's intervening circumstances that preclude drawing. Doesn't that present an issue of fact for the jury? I mean, there may be a very good explanation for each and every one of them. But isn't that some evidence of a retaliatory motive? No, your honor. The temporal proximity at best can only draw a weak inference of retaliation. And various cases have shown that under certain- Happens six or seven times, it's still only a weak inference? But when you're getting counseling memos starting as far back as June of 2009, before any known protected conduct- Is there not some evidence to suggest that the counseling memos were a sham or pretextual? There is no evidence of that, your honor, which is what's interesting. The board made its findings. Even if it doesn't have collateral estoppel effect, it's in the record what the board did. And the board seemed to find that these were pretextual, in effect.  Or are you talking about- I'm sorry, the hearing board, the state hearing board. The hearing officer ruled only on whether the misconduct had occurred. In most cases, he found it had occurred, but he found excuses for why it should not lead to Mr. Zaner's termination. He did not find in any case that these actions were taken in retaliation for the content of Mr. Zaner's- No, he wasn't. That wasn't the issue. Exactly, which is why there should be no collateral estoppel. Correct. Right. We agree on that. And the hearing officer's- I could agree on that, but it's still part of the record. Well, it's- In fact, somebody has looked at this and decided that there were substantial questions as to the viability of the charges against him. But it's not evidence, Your Honor. By its nature, the hearing officer's decision is not evidence, and he can't sidestep his obligation to produce evidence. Are his findings admissible? I'm sorry? Would his findings be admissible at trial? I would argue not. I would argue that's- Is there law on whether they are admissible? It has to be admissible as evidence, and one person's opinion as to what the facts show is not evidence. It's my opinion that Mr. Zaner should have been terminated for one-tenth of the misconduct that he engaged in. But I'm sure Your Honors would agree that isn't evidence. I'm sure Mr. Zaner would agree that as well. Well, I- Mr. He- We're not- We're not trying to decide whether he should be terminated or not. We're only trying to decide whether the case deserves further proceedings. And that requires the court to inspect whether there is actual evidence drawing an inference of causation from the protected conduct to the adverse actions. Most of the- the protected conduct constituted, A, this alleged May 2008 evaluation comment about alliances, where Mr. Zaner admits he engaged in no protected conduct at that time, and it's more than a year before even the first counseling memo. The next is these June 2009 comments Mr. Zaner supposedly made about Ms. Hsu to Ms. Dominick, who he has no evidence ever transmitted it to any of the appellees. There's no respondeat superior liability in a Section 1983 action, and there's no imputing knowledge for purposes of a First Amendment retaliation claim. I would cite Robel v. County of Erie for that precept, as well as the Ambrose case from the Third Circuit. So, until February of 2010, after the first five counseling memos, there's no temporal proximity to argue about. With regard to the Facebook meeting in February- So what in the defendant's view, the appellee's view, is the first arguable, and I'm not asking you to concede that it works, but the first arguable trigger point that would give rise to an inference? The first arguable trigger point would be- The bringing of the Article 78 proceeding? At best, the February 2010 Facebook meeting, which again is after five counseling memos, and it's followed by admitted instances of misconduct. The stubby comment, which Mr. Zaner admitted he did, and admitted was inappropriate. So, he brings the first Article 78 proceeding, he suspended within a few weeks, he wins the Article 78 proceeding, and five days later, the Board files formal charges against him. Yes, Your Honor, but before- Proximity there is so short that, why isn't that evidence of an intent to retaliate? Well, you have to have an extremely short temporal- Five days! I understand, Your Honor. It's not five days. From the August 25, 2010 Article 78 until the suspension on September 20- Justice Greenwood rules in his favor on October 1st, the Board files formal charges against him five days later. Those charges had already been drafted, and by the time he even filed the Article 78- You have explanations, but why shouldn't a jury be given the opportunity to decide these things? Because by the time of the Article 78 filing, he already had 18 counseling memos. He'd been the subject of advice from two, not one, but two attorneys that- And the hearing officer found basically that, well, none of those counseling memos was substantiated. But he did not find that they were unsubstantiated. He, in most cases, simply found excuses why Mr. Zaner should not be terminated for the conduct he did engage in. And again, under Clark County, slattery and anonymity- In the meantime, he was suspended for- I'm sorry? During all these proceedings, he had been suspended for, like, five years or something? He was suspended for a long time with full pay, as is required by the 3020- And then, in the end, the hearing officer reinstated him. Yes, Your Honor. And I would also point out that between the filing- You don't think the jury can hear all of that? I do not think that he's raised an inference of retaliation. From the August 25, 2010 filing until the suspension, there was the intervening event of him giving cigarettes back to minor children on school grounds. And the superintendent, who had been, until this time, his defender, said, he's got to go. He's a danger to himself and the other students. So, there was intervening conduct that destroys any inference of causation, simply from the accident- Was that incident before the hearing officer, as well? Yes, it was. And the hearing officer rejected that? He did, but his findings have no collateral estoppel, for a couple of reasons. First, the identical issue, as Your Honor- If we agree with you that there's no collateral estoppel, the question is whether they are then admissible and somehow irrelevant to the inquiry. They aren't evidence. They aren't testimony of someone who was present. It's not documentary evidence. It's an opinion. And it's, unless the court is willing- But you have to realize that it does cause us to have some question about the viability of the charges, of all the charges that have been made against him. Well, all I can tell you is that the burden against the district was heavy. As it is in all 3028 proceedings, the district was deprived of any opportunity for discovery, whereas Appellant had virtually unlimited discovery. There was no full and fair opportunity to litigate, aside from the fact that the issues are not the same, for collateral estoppel purposes. And what is the point of the elements and requirements of collateral estoppel if Appellant can simply turn around and say, but here's the hearing decision anyways, so we're done with you? And I'm not sure how the three of us would come down on that. Ultimately, you'll get an answer. But I think Judge Walker's question, or at least the one that I would follow up from with the one that he posed is, given all of that, regardless of whether there's a collateral estoppel effect, given that there was an evidentiary, an extensive evidentiary proceeding of some 40 days, at least as your adversary, I haven't counted them up, suggested, doesn't that suggest at least that there are facts that need to be resolved in a proceeding that cannot, that are in dispute, that cannot be resolved in the course of these summary judgment proceedings? Again, I would contend that he has not sustained his burden of showing an inference of retaliatory causation at the prima facie stage. But even if this Court believes he had, there's still the question of the Mount Healthy defense. The only evidence before this Court on that subject, whether the Board would have taken the same action in the absence of Mr. Zaner's protected conduct, is the affidavits of the Board members. All right. And you get me right to the point where I want it to be, so thank you very much. Are you suggesting seriously that when somebody counters something that, and I'm not saying they're not totally true and sworn, but at least are subject to some credibility analysis if that testimony were given live, can be a basis for granting of summary judgment? When there's no evidence on the other side, that's exactly when summary judgment should be awarded. And it's been awarded in various cases under Mount Healthy. And remember, the Board's, the appellee's burden is not to show that they were right in trying to terminate Mr. Zaner, but only that they would have taken the same action. The decision whether they could terminate him was taken out of their hands by education. 3028 proceedings. Exactly. The comparison under Mount Healthy is not, was the Board right? Were they motivated by improper reasons other than First Amendment retaliation? The question is, would they have taken the same action absent the protected conduct? I'd cite Scher versus Coughlin and also the anemone case for that concept. I'd also like to note before it slips my mind that the counseling memos were not adverse actions that are cognizable under First Amendment retaliation jurisprudence. Judge Chin's decision in Tepperwine versus Entergy Nuclear Operations. Can you just clarify for me precisely what the adverse actions, maybe your adversary could do that on rebuttal, what precisely the adverse actions are that are being relied upon here? The suspension is one of them. Suspension and I believe the 3028. The institution of the charges, filing of the 3020 charges. I believe the suspension, the 3028 charges, and the Part 83 reports are the only things in this record that are. And what was the third one? I'm sorry. The filing of the Part 83 report, which the superintendent is required to do when 3028 charges are filed. So it's all of a piece. And again. Well, that was the suspension was on the 6th of October, correct? The suspension started September 20 or I believe it was September 15. I thought it was after that meeting, but. October 6, 2010, they went into the board meeting planning to vote on the charges that had already been drafted up. He'd been suspended prior to that? He had been suspended prior to that. OK. And is there a claim, as you understand it, based on what I would call the prospective exclusion? You can't come to these meetings. I'm sorry, say that again. The prospective exclusion. You are not allowed to come to these meetings anymore. They have made a claim as to that. Thank you for reminding me of that, Your Honor. And they quibble over the length of the ban, but I'd submit that after the board had tried imposing limits on time for public speakers, had tried bringing in moderators, repeatedly admonishing Mr. Zaner and bringing in police presence, and he's still engaged in misconduct such as yelling at the board president. I have no respect for you, Mary Ali. I have no respect for you. Any reasonable employer would have banned him from further meetings on a reasonable prediction of disruption and sought his termination. Thank you. Thank you, Mr. Spagnoli. Excuse me, Mr. Ciotoli, you've got three minutes. Thank you, and again, may it please the court. Thank you so much. Is it collateral estoppel effect? This court's decision in Berkey-Bile, I think it's exactly on point. And also, I'll look at Cobb versus Ponzi a little bit for your honors. Do we have to find, in order for you to prevail and get this case, have summary judgment reversed, do we have to find that there was collateral estoppel? No, your honor, I think that's just- Why don't you argue independently of the collateral estoppel? I think you might be on stronger ground. Yeah, I think, you know, when I first saw their motion papers and then the court's decision, my first thought was, these are all jury questions. They have their version of the facts. We have our version of the facts. You heard a lot about, well, these counseling memos, there's excuses for this and excuses for that. I agree. The hearing officer heard all the evidence. He judged the credibility of the witnesses. So I see these are all disputed issues of fact, which can't be decided as a matter of law. Are the hearing officer's findings admissible at trial? Under Berkey-Bile, your honor, this Court's decision, it was found that the hearing officer's decisions would have collateral estoppel effect, which I think means- Putting aside collateral estoppel, assuming there isn't collateral estoppel, are the findings admissible at trial? I could see a motion in limine in our future, your honor, before Judge Mordew on how he'll have to treat that. We would certainly want to get it in. I see a motion, but could you see a result? And district counsel will oppose it and we'll let Judge Mordew render his decision. But in any event, we already tried this case once. I mean, we tried it over 41 days. All these witnesses, the teachers, they all testified. We'll bring them in again and we'll have them testify again in federal court. And I believe we'll prevail in federal court as we prevailed before this hearing officer. Even if Berkey-Bile and collateral estoppel doesn't apply, they're disputed issues of fact, and I'm confident we'll prevail on all of them. When you look at Cobb, which is what the district court relied on, your honors, and again, another Second Circuit decision, he talked about there being a different, in two different proceedings, a different burden of proof. But even there in Cobb, the one example the court referred to was the difference between a criminal and a civil proceeding. Obviously, that's going to be a different burden of proof. He also had a case where it was a difference between clear and convincing evidence versus preponderance of the evidence. I can see that's different. Here it's all preponderance of the evidence. Here we prevailed on the frivolous charge. And I think, you know, Cobb is peculiar to those facts. I think under Berkey-Bile, do we have identical issues as to these counseling memos? These things were heard to death before this hearing officer, Your Honor. Were they materially decided? The only thing the hearing officer decided, and I am shying away from focusing on the collateral estoppel effect. The only thing was whether the punishment — it's not that these things didn't occur, but whether the punishment, which was his discharge, was merited. I'm out of time. I think he found three things. Many of them were factually deficient, factually not true. They were pretextual, or they were de minimis. I think if you look at what he said about those counseling memos, either they're not true, they're pretextual, or they're de minimis. Minor, minor, minor things. Thank you, Your Honors. Thank you both. And we will reserve decision and get you one in due course.